IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN CABADING,                                   No. 3:20-cv-00312-HZ
an individual,

                                            OPINION & ORDER

                  Plaintiff,

      v.

PORT OF PORTLAND,
an Oregon municipal corporation
and port district of the State of
Oregon, in personam, KINDER
MORGAN OPERATING L.P. "C",
a Texas limited partnership, in
personam, and KINDER MORGAN
BULK TERMINALS, LLC,
a Texas limited liability company,
in personam,

                  Defendants.

Gordon T. Carey, Jr.
6215 NE 31st Avenue
PO Box 11570
Portland, OR 97211

Nicholas J. Neidzwski
Anderson Carey Williams Neidzwski
21 Bellwether Way, Suite 104
Bellingham, WA 98225

      Attorneys for Plaintiff

Chris M. Reilly
W.L. Rivers Black, III
Nicoll Black & Feig, PLLC
1325 4th Ave, Suite 1650
Seattle, WA 98101

      Attorneys for Defendant Port of Portland

Paul A.C. Berg
Chester D. Hill
Cosgrave Vergeer Kester, LLP
900 SW Fifth Avenue, 24th Floor
Portland, OR 97204

      Attorneys for Defendant Kinder Morgan

HERNÁNDEZ, District Judge:

Plaintiff Johnathan Cabading was severely injured when he was struck by a mooring line while onboard a vessel docked at Berth 410/411 at the Port of Portland's Terminal Four. Plaintiff brings negligence claims against Defendant Port of Portland and Defendants Kinder Morgan Operating L.P. "C" and Kinder Morgan Bulk Terminals, LLC (herein "Kinder Morgan"). Defendant Port of Portland brings crossclaims against Defendant Kinder Morgan for breach of contract. Defendant Port of Portland moves for summary judgment on Plaintiff's negligence claims and moves to exclude Plaintiff's liability experts. Defendant Kinder Morgan moves for summary judgment on Plaintiff's negligence claims and on Defendant Port of Portland's crossclaims. Finally, Defendant Kinder Morgan moves to strike Plaintiff's rebuttal report. For the reasons that follow, the Court grants in part and denies in part the parties' motions.

//

2 – OPINION & ORDER

# BACKGROUND

This case concerns a catastrophic maritime accident. A mooring line became fouled during a linehauling operation, then snapped up and struck Plaintiff in the chest, face, and head. The accident occurred while Plaintiff was onboard a vessel docked at Berth 410/411 at the Port of Portland's Terminal Four.

Berth 410 is located at the Port of Portland's Terminal 4 along the Willamette River. Neidzwski Decl. Ex. 63 30:22-23, ECF 120-63. It is an extension of the Berth 411 structure. *Id.* 31:1-2. Berth 410/411 has a fender system that consists of timber and steel piles. Neidzwski Decl. Ex. 17 ("BergerABAM Assessment") at 8.[1] The "[s]teel piles are covered with an HDPE pipe sleeve." *Id.*

Defendant Kinder Morgan leases the waterfront property of Terminal Four from Defendant Port of Portland to conduct its soda ash operations. Lidstone Decl. ¶ 3, ECF 87; Lidstone Decl. Ex. 1 ("Lease Agreement"), ECF 87-1. Soda ash is a substance used primarily in glass manufacturing. Lidstone Decl. ¶ 3. Defendant Kinder Morgan receives soda ash from rail cars, stores it on its premises, and then loads it onto vessels moored at Berth 410/411. Lidstone Decl. ¶ 3. Soda ash is the only material loaded at Berth 410/411. Neidzwski Decl. Ex. 50 4:19-24, ECF 120-50.

Defendant Kinder Morgan uses a stationary or fixed loader to load soda ash onto vessels moored at Berth 410/411. Neidzwski Decl. Ex. 57 243:3-5, ECF 120-57. Thus, to position a specific hull of the vessel under the fixed loader, the vessel must move along the face of the dock. Hill Decl. Ex. 8 168:2-11, ECF 86-8. Vessels use linehauling to make these movements.

---

[1] Defendant Port of Portland did not individually file some of the exhibits attached to its declarations. As a result, Court cites to blue page numbers at the top of each document (i.e. the ECF page numbers) for <u>all</u> exhibits.

Linehauling moves a vessel laterally along the dock using the vessel's mooring lines without the use of engines. Reilly Decl. Ex. 78:5-7, ECF 89-1.  At Berth 410/411, vessel mooring, unmooring, and linehauling is conducted by the vessel, or with the assistance of a crew of dock-side line handlers hired by the vessel. Lidstone Decl. ¶ 4; Hill Decl. Ex. 7 at 55:13-18.

On June 17, 2019, the M/V PUFFIN ARROW arrived at Berth 410/411 to load soda ash into eight cargo holds aboard the vessel. Ruben Decl. ¶ 7. Plaintiff was the chief mate on the M/V PUFFIN ARROW. McCurdy Aff. Ex. 1 at 4, ECF 89-3. On June 19, 2019, M/V PUFFIN ARROW was linehauling in order to shift the vessel. Reilly Decl. Ex. 1 58:2-8, 80:1-2. During the linehauling operation, the captain of the vessel told Plaintiff to "check the spring line that got stuck up at the fender." *Id.* at 84:4-7, 105:23-25. Plaintiff followed this instruction. Neidzwski Decl. Ex. 24. Plaintiff was then struck by a mooring line. *Id.* A video of the incident shows Plaintiff standing on the main deck of the vessel near the starboard rail when he is struck by the line. *Id*. Plaintiff remembers nothing after receiving the captain's instruction to check the mooring line. Reilly Decl. Ex. 11 05:5-6. He suffered several traumatic injuries from the accident. Cabading Decl. ¶ 7, ECF 114.

## I.    Relationship Between Defendant Port of Portland and Defendant Kinder Morgan

Defendant Kinder Morgan leases part of Terminal Four from Defendant Port of Portland and has a license to use another portion of the Terminal for its soda ash business. Lidstone Decl. ¶ 3. The Lease Agreement between the parties gives Defendant Kinder Morgan a "license for the preferential use of the wharves and aprons at Berths 410 and 411, Terminal 4." Section 2.3 Lease Agreement at 13. This is referred to as the "Preferential Use Area" in the agreement. *Id.* The "'berths' are the spaces . . . the vessel occupies when it is docked (or 'berthed')." Lidstone Decl. ¶ 7. "The wharf is the platform area adjacent to the berths." *Id.* In the "Preferential Use Area"

"[t]here is only one 'apron,' which is the area adjacent to the wharf, which one passes over when coming onto the wharf." *Id.*

Section 6.5 of the Lease Agreement specifies the parties' maintenance obligations. It states "[t]he Port shall maintain the following items in good operating condition and in good repair: (i) at Berths 410 and 411, the wharves and aprons, pilings, under dock walkways and lighting, and mooring systems including dolphins." Section 6.5 Lease Agreement at 26. It states further "[l]essee shall provide written notice to the Port of any required maintenance to be performed pursuant to this Section 6.5." *Id.*

The Lease Agreement also contains provisions related to indemnification and liability insurance between the Defendants. *See* Sections 9.1.1, 9.1.2, & 9.2.9.1 Lease Agreement at 36–38.

## II.    Condition of Berth 410/411 Prior to Plaintiff's Accident

In 2018, Defendant Port of Portland commissioned a fender system condition assessment. Neidzwski Decl. Ex. 46 94:13-23, ECF 120-46; BergerABAM Assessment at 2. The assessment "consisted of a visual inspection of fender piles, rubber fenders, wales, chocks, and fender panels above the water level." BergerABAM Assessment at 7. It was a "routine inspection" meant to "assess the general condition of the fender systems and make recommendations for maintenance repairs." *Id.* The assessment included an inspection of the fender system at Berth 410/411. *Id.* at 8–9. It rated the fender system at Berth 410/411 as "serious to poor with approximately 55 percent of the timber piles rated with major to severe damage." *Id.* at 9. It noted that "[s]ome HDPE sleeves exhibit abrasion damage." *Id.* In its conclusions and recommendations about all the marine terminals, it stated "HDPE sleeves over the steel fender piles are split or torn in many locations." According to Defendant Port of Portland's engineering project manager that

requested the assessment, a serious to poor condition rating is concerning at any berth. Neidzwski Decl. Ex. 46 33:25-34:5.

In March 2019, Defendant Port of Portland conducted its own fender pile inspection. Neidzwski Decl. Ex. 19, ECF 120-19 ("March 2019 Fender Pile Inspection Summary"). Eleven of the steel pilings received a condition rating of moderate damage. *Id.* at 2–7; Neidzwski Decl. Ex. 62 77:21-25. The remaining 32 steel pilings received a condition rating of minor damage. *Id.*

## III.    Procedural History

Plaintiff filed this action on February 25, 2020. Compl., ECF 1. In his Second Amended Complaint he brings claims for negligence and gross negligence against Defendant Port of Portland and Defendant Kinder Morgan. Second Am. Compl., ECF 60. In its Answer to Plaintiff's Second Amended Complaint, Defendant Port of Portland brought crossclaims against Defendant Kinder Morgan for breach of contract. Def. Port Answer, ECF 61.

Defendant Port of Portland moves for summary judgment on Plaintiff's negligence claims and moves to exclude Plaintiff's liability experts. Def. Port of Portland ("Port") Mot., ECF 89. Defendant Kinder Morgan moves for summary judgment on Plaintiff's negligence claims and in the alternative adopts sections of Defendant Port of Portland's Motion for Summary Judgment. Def. Kinder Morgan ("KM") Mot, ECF 84, Def. KM. Alt. Mot., ECF 90. Defendant Kinder Morgan also moved for summary judgment on Port of Portland's crossclaims. Def. KM Mot. Port Crossclaims, ECF 85. Finally, Defendant Kinder Morgan moves to strike one of Plaintiff's rebuttal reports. KM Mot. to Strike, ECF 82.

## EVIDENTIARY OBJECTIONS

The parties make several evidentiary objections. The Court does not consider much of the evidence the parties object to in determining whether Plaintiff has raised a question of material

fact about Defendants' conduct. The Court thus declines to rule on whether this evidence is admissible for proving Plaintiff's claims or should be stricken as prejudicial and unhelpful at this stage in the litigation. The Court addresses the parties' objections in the body of the Opinion and Order when necessary.

## I.    Motion to Strike Plaintiff's Rebuttal Expert Tortora

Defendant Kinder Morgan moves to strike Plaintiff's rebuttal report prepared by expert Captain Sean P. Tortora, MS, USMS ("Tortora Report"). Defendant Kinder Morgan argues the report lacks proper rebuttal opinion and therefore should have been produced by the initial expert disclosure deadline. Plaintiff contends that the Tortora Report rebuts Defendant Kinder Morgan's expert report prepared by Captain Joseph A. Derie II, DSc PE ("Derie Report").

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose any person who they may call as an expert witness during trial. "Federal Rule of Civil Procedure 37(c)(1) gives 'teeth' to the disclosure requirements of Rule 26(a) by forbidding use at trial of any information not properly disclosed." *Johnson v. Grays Harbor Cmty. Hosp.*, No. C06-5502BHS, 2007 WL 4510313, at *1 (W.D. Wash. Dec. 18, 2007) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001)). Under Rule 26(a)(2)(D)(ii) rebuttal experts present "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)."

The Court denies Defendant Kinder Morgan's motion. The Tortora Report refutes Defendant Kinder Morgan's affirmative defenses discussed in the Derie Report and is a permissible rebuttal report. *See e.g.*, *Specter v. Texas Turbine Conversions, Inc.*, No. 3:17-CV-00194-TMB, 2020 WL 7234369, at *6 (D. Alaska Dec. 8, 2020) ("Even if a defense . . . could have been anticipated, that does not automatically mean Plaintiffs cannot rebut such expert

testimony when it arises."). Rebuttal 15 does not supplement Plaintiff's case-in-chief, as

Defendant Kinder Morgan contends, but appropriately responds to Defendant Kinder Morgan's

defense of contributory negligence. Additionally, any prejudice Defendant Kinder Morgan may

have suffered was cured when it had an opportunity to depose Captain Tortora.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28

(9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218

(9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v.*

*Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108,

1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the

existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Four motions for summary judgment are before the Court. The Court begins by addressing Defendant Port of Portland's motion on Plaintiff's claims and Defendant Kinder Morgan's alternative motion. It then turns to Defendant Kinder Morgan's independent motion on Plaintiff's claims and concludes by addressing Defendant Kinder Morgan's motion for summary judgment on Defendant Port of Portland's crossclaims.

## I.    Defendants' Motions on Plaintiff's Negligence Claims

Plaintiff brings claims for negligence and gross negligence against Defendants Port of Portland and Kinder Morgan. Plaintiff's theory of negligence is that he was struck by a mooring line after it became snagged on a protruding section of sheathing on one of the steel pilings along the face of the dock that Defendants failed to make safe. Pl. Resp. to Port at 14, ECF 112. Defendants contend generally that the mooring line was pinched between the dock and vessel, not snagged on the face of the dock.

### A.    Applicable Law

The Court agrees with the parties that maritime law applies to Plaintiff's negligence claims. "Federal district courts have original jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction.'" *Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978, 982 (9th Cir. 2007) (citing 28 U.S.C. § 1333(1) and U.S. CONST. art. III, § 2). To establish federal maritime jurisdiction over a tort claim, a plaintiff must satisfy the "location test" and the "connection test" (also called the "nexus" or "relationship" test). *Id.*

The location test asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* (citation omitted). As for the "connection test" the court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce" and then examine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (citation and internal quotation marks omitted).

The location test is satisfied because Plaintiff's injury occurred while the vessel was floating on navigable waters. The connection test is met because crew injuries disrupt maritime commerce and Plaintiff was injured while engaged in a traditional maritime activity—attending to a fouled mooring line. *See Gruver v. Lesman Fisheries Inc*., 489 F.3d 978, 983 (9th Cir. 2007) (finding that physical injury to a crewmember could have a "detrimental effect on maritime commerce"). Thus, Plaintiff's claim can be considered a maritime tort.

A claim for maritime negligence involves the "ordinary negligence duty of reasonable care under the circumstances." *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1344 (9th Cir. 1988); *Christensen v. Georgia-Pac. Corp.*, 279 F.3d 807, 815 (9th Cir. 2002) ("maritime negligence actions involve a duty of reasonable care"). To state a claim for maritime negligence, Plaintiff must establish: "(1) duty; (2) breach; (3) causation; and (4) damages." *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011) (internal quotations and citation omitted).

### B.    Maritime Negligence Claim – Port of Portland

Defendant Port of Portland argues it is entitled to summary judgment on Plaintiff's negligence claims because Plaintiff cannot establish the duty or causation elements. Plaintiff

responds that Defendant owed him an ordinary duty of care and that he can establish causation using expert opinion.

Defendant Port of Portland makes several arguments as to why it did not owe Plaintiff a duty of care. The Court addresses them and Plaintiff's responses in turn. First, as a general matter, Defendant Port of Portland contends it has no liability for Plaintiff's injuries because it does not play a role in vessel linehauling. Defendant Port of Portland's emphasis on linehauling is misplaced. Whether a linehauling error or Plaintiff's own negligence caused Plaintiff's injuries is a question of comparative fault for trial. That Defendant Port of Portland is not involved in linehauling operations does not relieve it of any possible duty to Plaintiff.

Defendant Port of Portland concedes it had "a duty to exercise reasonable care with respect to its status as the owner of the commercial dock under the lease." Def. Port of Portland Reply at 18 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). Defendant Port of Portland asks the Court to define the duty more narrowly though, contending it had no duty to inspect for or repair "snagging hazards." But the Court cannot determine the standard of care owed at this level of specificity at summary judgment on a disputed record.

Defendant Port of Portland argues Plaintiff cannot establish it owed Plaintiff a duty of care because he points to no law, regulation, standard, or rule that requires the Port to identify and repair "snagging hazards." First, laws, regulations, and rules are not the only sources that establish a duty of care in admiralty. Plaintiff may also rely on custom and the "the demands of reasonableness and prudence." *In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 211 (3d Cir. 2013), *as amended* (June 6, 2013), *as amended* (June 28, 2013), *as amended on denial of reh'g and reh'g en banc* (July 12, 2013) (citations omitted).

Additionally, there is disagreement between the parties' experts about whether an industry standard applies. Defendant Port of Portland's expert, Bruce I. Ostbo, PE, SE, stated that to his knowledge, "no industry standard, manual of practice, or design code . . .  mentions, requires, or discusses the elimination of mooring line snagging hazards on the rubbing surface of a fender." Ostbo Decl. Ex. 2 at 10 ECF 89-4. He noted that Plaintiff's expert, William Kelley, does not identify a standard for inspection, maintenance, and repair in his assessment of "the Port's compliance with its duties as owner of the dock and berth." *Id.* But Plaintiff's other expert, Craig Sylvester, does rely on an industry standard to support his conclusion about the reasonableness of Defendant's conduct. Sylvester Decl. Ex. 2 at 9, ECF 115-2 ("He [Mr. Schaefer] overlooked the standard cited in the ASCE Design of Marine Facilities that offers similar requirements for fender material, including polymetric material such as HDPE."). The August 2018 "Port of Portland 2018 Fender Condition Assessment" conducted by BergerABAM also referred to this standard. *See* BergerABAM Assessment ("All fender systems were inspected with the scope of work, with additional guidance from American Society of Civil Engineers (ASCE)"). Thus, there is disagreement between the parties' experts about the relevant industry standard that the Court cannot resolve on summary judgment.

Along with expert opinion, Plaintiff provides other evidence Defendant Port of Portland may have breached its duty of care. Defendant knew that the fender system had significant deterioration affecting many of the steel and timber piles. *See* 2018 BergerABAM Assessment and March 2019 Fender Pile Inspection Summary. It was also aware it had assumed a responsibility under its lease with Defendant Kinder Morgan to maintain the pilings at Berths 410/411 "in good operating condition and in good repair." Section 6.5 Lease Agreement at 26. Viewing the facts in the light most favorable to Plaintiff, it is reasonable to conclude Defendant

Port of Portland acted unreasonably, and without prudence, when it failed to remedy the known deficiencies in the fender system. *In re Frescati Shipping Co., Ltd.*, 718 F.3d at 211. It is also reasonable to infer that a failure to maintain the pilings in good repair could create a risk of harm for those working on vessels moored at Berth 410/411. Accordingly, when viewed in the light most favorable to Plaintiff, the disagreement between experts about the applicable industry standard, and Defendant's failure to maintain the pilings, create a dispute of material fact about whether Defendant breached its duty to act reasonably under the circumstances when it failed to maintain the pilings at Berth 410/411. *See Pioquinto v. M/V Lowlands Scheldt*, No. 3:18-CV-00411, 2021 WL 1410037, at *24 (D. Or. Feb. 4, 2021), *report and recommendation adopted in part, rejected in part*, No. 3:18-CV-00411-JR, 2021 WL 2554623 (D. Or. June 22, 2021) (discussing Port of Portland's maintenance obligations at Berth 410/411 under the same lease provisions and policies).

### i.    Duty to Warn

Defendant Port of Portland argues it did not owe Plaintiff a duty to warn because the condition of the dock was not a hidden hazard.[2] Plaintiff responds that the risks associated with the dock were not immediately ascertainable and that the condition of the dock was not open and obvious to Plaintiff.

"The duty of ordinary care includes, of course, a duty to warn of harm that is reasonably foreseeable under the circumstances." *Bubla v. Bradshaw*, 795 F.2d 349, 353 (4th Cir. 1986). As the owner of the dock, Defendant Port of Portland had a duty to remove dangerous conditions or

---

[2] At another point, Defendant Port of Portland argues it had no duty to warn Plaintiff about the fouled condition of the line because it was an open and obvious danger. Plaintiff's duty to warn theory was based on the condition of the dock, not the fouled line, so the Court does not address this argument.

to warn vessels using its berths of the existence of a dangerous condition. *See Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 365 (9th Cir. 1974) (quoting *Smith v. Burnett*, 173 U.S. 430 (1898) ("Although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of the berths threat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths."). However, the duty does not extend to open and obvious conditions. *See Kure Shipping S.A. v. Louisiana Pac. Corp.*, No. 98-CV-648, 2001 WL 34037327, at *12 (N.D. Cal. Aug. 27, 2001) (quoting *Grace Line*, 500 F.2d at 365) ("Because the wharfinger's duty is discharged if the vessel has notice of the dangers, it has been held that there is no duty if the complained of 'condition is open and obvious to those in charge of the vessel's management.'").

Summary judgment is inappropriate on this issue. Defendant Port of Portland argues Captain Ruben's declaration shows the condition of the fender system was open and obvious. In his declaration, Captain Ruben stated that after the incident, he observed damage on sections of the face of the dock by the area where he saw the forward spring line break free. Ruben Decl. ¶ 20. Defendant supposes that if Captain Ruben could observe the condition of the fender system after the incident, he should have been able to observe it before the incident. However, Defendant Port of Portland does not establish or show that Captain Ruben knew or should have known that the potentially observable condition was dangerous prior to the accident. In his declaration, Plaintiff states:

> Without warning regarding hazards related to Berth 410/411, I would not have thought or known that a line which was reported as stuck was actually snagged on a part of the dock. Prior to June 19, 2019, I had never seen a mooring line which was snagged or caught on a protruding or damaged section of the dock.

Cabading Decl. ¶ 6.

14 – OPINION & ORDER

Drawing all inference in Plaintiff's favor, the nature of the hazardous condition of the dock was not open and obvious. The Court finds Plaintiff creates an issue of fact as to whether the alleged hazardous condition of the face of the dock was open and obvious. At trial, the Court will consider whether the condition of the dock was readily observable in determining Defendants' potential breach of the duty to warn and the issue of comparative fault.

      **ii.**      **Causation**

Next, Defendant Port of Portland contends Plaintiff has no admissible causation evidence. Specifically, Defendant Port of Portland urges the Court to reject the opinions of Plaintiff's experts as to the location of the vessel because it finds their opinions "completely detached from important facts of this case." Def. Port Mot. at 22. Essentially, Defendant Port of Portland tries to challenge causation by attacking Plaintiff's experts.

Defendant Port of Portland argues that the photographic and video evidence in the record conclusively determines the location of the vessel at the time of the accident. Based on this evidence it contends, the forward spring line that struck Plaintiff was near piles 32 – 45, not piles 10 – 30 as Plaintiff's experts concluded. This is important because other evidence shows that some of the steel piles in the 10 – 30 range were unquestionably damaged.

Defendant Port of Portland describes the photos of Plaintiff post-accident and the video of the incident as though they speak for themselves. They do not. The video of the incident does not "clearly contradict" Plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) (finding plaintiff's version of events "utterly discredited by the record" based on a videotape of the car chase). The video shows one perspective and was shot a far distance from the accident. Even if the video helps the Court determine which pilings Plaintiff was closest to at the time of the accident, it does not show with certainty where the line was fouled relative to the

face of the dock. Furthermore, determining the position of the vessel based on the photograph of

Plaintiff lying on the deck requires context and familiarity with the berth. Defendant Port of

Portland's own expert makes this point.

Defendant's expert, Gerard F. Schaefer, did not simply look at the photographic evidence

in this case to draw his conclusion about the location of the vessel. Rather, to reach his opinion

he carefully analyzed the photo of Plaintiff on the deck post-accident and compared it to other

information, all with the benefit of his maritime expertise. Schaefer Decl. ¶ 3–4. In his report,

Mr. Schaefer draws the Court's attention to the location of a rail spur and a moveable orange and

white barrier in the photo of Plaintiff lying on the deck post-accident. *Id.* ¶ 3. Based on these

items, he relied on a google image of the area from a different day, to identify the M/V PUFFIN

ARROW's position relative to these markers and the location of two bollards. *Id.* Using this

information, he opines "the position of the vessel at which Plaintiff was being tended to . . . was

in the vicinity of pilings 37 and 38." *Id.*

Plaintiff's experts relied on the video of the incident, and some of the same photographs

as Defendant Port of Portland's experts yet drew a different conclusion about the location of the

vessel and accident. Sylvester Decl. Ex. 1 at 13, ECF 115-1 (accident "appears to occur between

Piles 10 through 30"); Kelley Decl. Ex. 2 at 5, ECF 116-2 ("The most likely piling number range

where both incidents occurred is between piling numbers 10 to 30."). This suggests there is a

reasonable dispute between the parties' experts about the location of the vessel based on the

photographic and video evidence available in this case. On summary judgment, the Court cannot

resolve a factual dispute between the parties' experts. *See Elosu v. Middlefork Ranch Inc.*, No.

21-35309, 2022 WL 534345, at *7 (9th Cir. Feb. 23, 2022) ("Rule 702 does not license a court to

engage in freeform factfinding, to select between competing versions of the evidence, or to

determine the veracity of the expert's conclusions at the admissibility stage.") And unaided by experts, the Court cannot determine the vessel's location as a matter of law.

Defendant Port of Portland also contends that Plaintiff's experts did not employ a valid or reliable process to reach their opinion. Defendant Port of Portland's experts relied on the same method as Plaintiff's experts—they analyzed photos and videos of the accident and the scene post-accident with the benefit of their expertise in the maritime industry to draw conclusions about what caused Plaintiff's injuries. The Court will not exclude Plaintiff's experts on this basis at summary judgment.

Having considered Defendant Port of Portland's objections to Plaintiff's expert opinions, the Court reviews Plaintiff's causation evidence. Plaintiff submitted evidence that Defendant Port of Portland knew that several pilings along the face of the dock were in serious to poor condition. *See* BergerABAM 2018 Report and March 2019 Fender Inspection Summary. He also creates a question of fact about whether the mooring line that struck Plaintiff was near these damaged pilings. Plaintiff offered two expert reports that concluded the accident was due to "a mooring line snapback after becoming fouled on a damaged piling HDPE rub tube." Sylvester Decl. Ex. 1 at 37, Ex. 2 at 10 ("failures in the fender pile rub material and protruding pieces of the HDPE material presented an added line snag hazard, a dangerous condition); Kelley Decl. Ex. 2 at 5 ("the vessel's spring line became snagged or fouled on protruding structures and damaged components of the pier and its fendering systems due to the poor condition of Berth 410/411."). After watching the video of Plaintiff's accident during his deposition, Officer Christopher Kaegi, the Port of Portland's Marine Security Officer, testified that what happened to the line that struck Plaintiff was different from the numerous times he had seen a line become pinched between the dock and a vessel. Neidzwski Decl. Ex. 54 137:5-138:21, 144:7-9.

Viewing the evidence in the light most favorable to Plaintiff, the trier of fact could conclude that Defendant Port of Portland's failure to maintain the face of the dock was a substantial factor in Plaintiff's accident, and that the line hit him after it became fouled on the face of the dock. *See W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1127 (W.D. Wash. 2021) ("A defendant's negligence must be a 'substantial factor' in causing the injury, with 'substantial' defined as 'more than but for the negligence, the harm would not have resulted.'" (citation omitted)).

Finally, Defendant Port of Portland argues Plaintiff cannot establish proximate cause because he has not shown that the Port had actual or constructive knowledge of "snagging hazards." "In admiralty, the touchstone of proximate cause is foreseeability; the injury or damage must be a reasonably probable consequence of the defendant's act or omission." Thomas J. Schoenbaum, Admiralty and Maritime Law § 5:4, at 295 (6th ed. 2018); *see also In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 212 (5th Cir. 2010) ("To be foreseeable, the harm alleged must bear some proximate relationship with the negligent conduct such that it can reasonably be said to be within the 'scope of the risk' created by that conduct."). Viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff creates a question of fact as to proximate cause.

The 2018 BergerABAM report and March 2019 Fender Assessment show that Defendant Port of Port had actual knowledge of chronic defects in Berth 410/411's fendering system and the impact of deferred maintenance at the berth. Additionally, at the time of Plaintiff's injury, Defendant Port of Portland was aware of a prior mooring line injury where the plaintiff alleged the condition of Berth 410/411 caused the accident.

In *Pioquinto*, a volunteer with the Seafarer's Mission was injured while standing on the dock of Berth 411. *Pioquinto*, No. 3:18-CV-00411, 2021 WL 1410037, at *2. He alleged that he was injured when he was struck by a mooring line. *Id.* at *16; *see also* Compl. ¶ 7, *Id.*, ECF 1; First Am. Compl. ¶ 5, *Id.*, ECF 19. This accident occurred more than a year and half before Plaintiff's accident. *Id.* While factually distinguishable in some respects, the *Pioquinto* accident allows the inference that Defendant Port of Portland was aware of the risk of not maintaining the fender system at Berth 410/411. Like Plaintiff, Mr. Pioquinto alleged he was struck by a mooring line and that Defendant Port of Portland's failure to "correct unsafe conditions" at Berth 411 caused his injury. First Am. Compl. ¶ 5, *Pioquinto*, No. 3:18-CV-00411, 2021 WL 1410037, ECF 19.

Viewing the evidence in the light most favorable to Plaintiff, he creates a question of material fact about whether Defendant Port of Portland breached its duty of care when it failed to maintain the face of the dock at Berth 410/411 and failed to warn Plaintiff of the known hazardous condition of the dock. In addition, he submits evidence that creates a reasonable inference that Defendant Port of Portland's conduct was the actual and proximate cause of his injuries. The Court denies Defendant Port of Portland's motion for summary judgment on Plaintiff's maritime negligence claims.

**C.      Maritime Negligence Claim – Kinder Morgan**

The Court now turns to Defendant Kinder Morgan's motion for summary judgment on Plaintiff's claims. Defendant Kinder Morgan argues it did not owe Plaintiff a duty of care because it did does not have possession or control over the activities that occur on the vessel or the berth. It also argues it did not know about the poor condition of Berth 410/411.

As previously stated, Defendant Kinder Morgan leases part of Terminal Four from Defendant Port of Portland and has a license to use another portion of the Terminal for its soda ash business. Lidstone Decl. ¶ 3. The Lease Agreement gives Defendant Kinder Morgan a "license for the preferential use of the wharves and aprons at Berths 410 and 411, Terminal 4." Lease Agreement 2.3 at 13.

> Regarding maintenance, Section 6.5 of the Lease Agreements states:
>
> > The Port shall maintain the following items in good operating condition and in good repair:
> > > (i) at Berths 410 and 411, the wharves and aprons, pilings, under dock walkways and lighting, and mooring systems including dolphins".
> >
> > * * *
> > Lessee shall provide written notice to the Port of any required maintenance to be performed pursuant to this Section 6.5. The Port shall be in compliance with this Section so long as the Port promptly commences and diligently pursues to completion such maintenance upon receiving notice of the same.

Lease Agreement 6.5 at 26.

### i.      Duty of Ordinary Care

As the lessee of the waterfront property at Terminal Four, Defendant Kinder Morgan owes those who use its facilities an "ordinary negligence duty of reasonable care under the circumstances." *Peters*, 857 F.2d at 1344. Plaintiff alleges Defendant Kinder Morgan breached this duty when it failed to maintain Berth 410/411, failed to request repairs at the berth, failed to inspect the berth, and failed to warn Plaintiff of hazardous conditions at the berth. Second Am. Compl. ¶ 40, ECF 60. The thrust of Defendant Kinder Morgan's argument on summary judgment is that it did owe Plaintiff a duty of care because it did not have possession or control over linehauling procedures, or the berths, mooring system, or pilings that make up the fender system.

The waterfront property on Terminal Four is dedicated to Defendant Kinder Morgan's soda ash operation. Although vessels conduct their own linehauling operations, they are docked at Berth 410/411 to receive soda ash from Defendant Kinder Morgan. Plaintiff's evidence shows Defendant Kinder Morgan exercises control over how vessels moor at Berth 410/411. For example, Defendant Kinder Morgan issues directions to vessels on where to secure their lines. *See* Neidzwski Decl. Ex. 44 (Kinder Morgan "Terminal 4, Berth 410 Mooring Lines Location and Regulations" directing vessel where to secure lines). There is also evidence Defendant Kinder Morgan warns vessels of line hazards. Neidzwski Decl. Ex. 49 47:8-11 ("we provide the vessel regulations that we expect them to abide by in regards to how the work is conducted during ship loading and that they are signatory to."); 75:15-18 ("we warn all vessels coming in of . . . line hazards, potential line hazards.").

The Court agrees with Defendant Kinder Morgan that it did not have a duty to repair or maintain components of Terminal Four that it did not lease from Defendant Port of Portland. By the express terms of the Lease Agreement, Defendant Kinder Morgan did not lease Berth 410/411 from Defendant Port of Portland. It therefore could not have made repairs to components of the fender systems per the Lease Agreement. This does not absolve Defendant Kinder Morgan of any liability, however.

The record shows Defendant Kinder Morgan has control over the everyday operations at Terminal Four, and to some extent the vessels moored at Berth 410/411. It also has a direct connection to the maintenance of Berth 410/411 as evidenced by the Section 6.5 of the Lease Agreement: "Lessee shall provide written notice to the Port of any required maintenance to be performed" "at Berths 410 and 411, the wharves and aprons, pilings, under dock walkways and

21 – OPINION & ORDER

lighting, and mooring systems including dolphins." This provision shows that Defendant Kinder Morgan bears some responsibility for ensuring Berth 410/411 is safe.

Accordingly, Plaintiff creates a question of fact as to whether Defendant Kinder Moran breached its ordinary duty of care when it failed to inspect or request repairs on Berth 410/411. Though Defendant Kinder Morgan does not lease the fender system from Defendant Port of Portland, it sits directly between the vessels calling at Berth 410/411 and Defendant Kinder Morgan's operations. The fender system is a necessary part of Defendant Kinder Morgan's cargo operation at Terminal Four, and one its clients rely on to be reasonably safe. Viewing the evidence in the light most favorable to Plaintiff, the trier of fact could conclude it was unreasonable for Defendant Kinder Morgan to not ensure the fender system used by vessels that receive soda ash at its leased premises was in good working order.

Similarly, Defendant Kinder Morgan owed Plaintiff a duty to warn of harm that is reasonably foreseeable under the circumstances. *Bubla*, 795 F.2d at 35. The face of the dock, though not leased by Defendant Kinder Morgan, abuts its leased premises. In fact, vessels mooring lines must go directly over the fender system in order to tie up on Defendant Kinder Morgan's leased premises. If the fender system presented a line hazard, Defendant Kinder Morgan as the operator of the facility, had a duty to warn vessels (and by default Plaintiff) of that hazard. As discussed above, Defendant Kinder Morgan took affirmative steps to direct vessels in how to moored at Berth 410/411. Viewed in the light most favorable to Plaintiff, Defendant Kinder Morgan assumed the responsibility of warning vessels of line hazards and breached this duty when it failed to warn Plaintiff of the hazards associated with the fender system.

### ii.    Stationary Loader and Linehauling Operation

In its response to Defendant Kinder Morgan's motion, Plaintiff writes that "Kinder Morgan failed to warn Plaintiff and the PUFFIN ARROW of any dangers associated with the

dock, installed a stationary loader without regard to the condition of the fender system, and rushed the line-hauling operation on June 19, 2019." Pl. Resp. to KM Mot. at 8. Defendant Kinder Morgan asks the Court to reject these arguments because Plaintiff did not make these specific allegations in its Complaint.

In its Second Amended Complaint, Plaintiff alleges Kinder Morgan was negligent in "causing the vessel to be negligently positioned and secured during mooring" and "causing the vessel to be negligently shifted." Second Am. Compl. ¶ 40. Although Plaintiff did not identify the stationary loader and alleged rushing specifically, he did "include the necessary factual allegations to state a claim" for negligence and gave Defendant notice that his theory of negligence was based in part on Defendant Kinder Morgan's role in how the vessel was positioned and shifted. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Still, the Court grants Defendant Kinder Morgan summary judgment on the issue of the use of a stationary loader. It is Plaintiff's burden to present sufficient evidence to create a triable issue of fact on its theories of negligence. *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted) (noting that once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial"). In his response, Plaintiff never explains or directs the Court to evidence showing how the use of stationary loader may have contributed to Plaintiff's injuries. The Court will not attempt to develop Plaintiff's arguments or pick through the record for him.  *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to "sort through the noodles in search of [a party's] claim" when it took the "spaghetti approach" and "heaved the entire contents of a pot against the wall in hopes that something would stick").

On the issue of whether Defendant Kinder Morgan rushed the linehauling operation, and whether the pace of the linehauling operation contributed to the accident, the Court denies summary judgment. The parties present competing evidence on how long the vessel had to conduct the line hauling operation and how Defendant Kinder Morgan required the vessel to shift along the dock. Ruben Decl. ¶¶ 9–10; Supp. Hill Decl., Ex. 2 at 72:14-73:6, ECF 126-2; Supp. Lidstone Dec. ¶¶ 4-5, Ex. 2 at 4-5, ECF 127-2. The Court will not make credibility determinations at summary judgment. When viewed in the light most favorable to Plaintiff, a reasonable juror could conclude the linehauling operation was rushed based on the declaration of Captain Ruben.

### iii.    Defendant Kinder Morgan's Knowledge

Defendant Kinder Morgan also argues it had no knowledge of any "snagging hazards" on the fender system. Plaintiff creates a question of fact about whether Defendant Kinder Morgan knew or should have known about the hazardous condition of the fender systems at Berth 410/411. Defendant Kinder Morgan undoubtably had less knowledge about the condition of the fender system than Defendant Port of Portland. Defendant Kinder Morgan was unaware of the 2018 BergerABAM Fender Assessments. Neidzwski Decl. Ex. 49 at 73:4-8; Supp. Hill Dec., Ex. 4 at 47:19-22, ECF 126-4. And Plaintiff does not show Defendant Kinder Morgan had notice of Defendant Port of Portland's March 2019 Fender Pile Inspection Summary. Still, viewed in the light most favorable to Plaintiff, he creates a question of fact about whether Defendant Kinder Morgan knew or should have known that the fender systems had deteriorated and posed a hazard.

On June 23, 2016, the AFRICAN MACAW sent a "Letter of Protest Against Unsafe Berth" to Defendant Kinder Morgan. Neidzwski Decl. Ex. 14. It stated in relevant part "this is to

bring to your notice that due to lack of proper fenders at the aforementioned berth our good vessel has suffered damage." *Id.* The letter then described damage to the side of the vessel allegedly caused by the fender system and included a photograph of the damaged vessel. *Id.*

Additionally, before Plaintiff's accident Defendant Kinder Morgan was aware of the Pioquinto accident. It knew that on September 9, 2017, a person standing on the dock next to a vessel was severely injured and believed that he had been struck by a mooring line. *Pioquinto*, No. 3:18-CV-00411, 2021 WL 1410037, at *3–*4; Compl., *Pioquinto*, No. 3:18-CV-00412-JR, Am. Compl., *Pioquinto*, No. 3:18-CV-00412-JR, ECF 11, First Am. Compl., No. 3:18-CV-00412-JR, ECF 19. Like the Plaintiff here, Mr. Pioquinto alleged that Defendants failed to inspect and provide safe conditions at the berth. First Am. Compl., No. 3:18-CV-00412-JR, ECF 19. Defendant Kinder Morgan's terminal manager was also aware of the Pioquinto accident. At his deposition, he testified that after he was hired in October 2017, he heard about the Pioquinto accident and that "he was hit by a line and hurt pretty bad." Neidzwski Decl. Ex. 49 88:2-24.

Taken together, this evidence presents a triable question of fact about whether Defendant Kinder Morgan had actual or constructive knowledge that the fender systems on its leased premises posed a risk of harm. The Court denies Defendant Kinder Morgan's motion for summary judgment on Plaintiff's maritime negligence claim.

## II.    Defendant Kinder Morgan's Motion for Summary Judgment on Defendant Port of Portland's Crossclaims

Defendant Kinder Morgan moves for summary judgment on Defendant Port of Portland's crossclaims for breach of contract, which allege Defendant Kinder Morgan breached a duty to defend and indemnify the Port under the Defendants' Lease Agreement. Defendant Port of Portland responds that the indemnity and insurance provisions in the Lease Agreement reflect its efforts to protect itself from the enhanced risks associated with allowing Defendant Kinder

Morgan to run its soda ash operations on Terminal Four and create a duty to defend and indemnify.

Three sections of the Lease Agreement are relevant to Defendant Kinder Morgan's motion:

9.1.1 Lessee's Indemnity

Lessee agrees to defend . . . indemnify, and hold harmless the Port . . . from and against any and all claims, damages, expenses, costs, fees . . . to the extent arising from any of the following . . .  (a) any negligent, grossly negligent or willful act or omission of Lessee or its Associates; (b) any operations or activities of Lessee or its Associates on the Premises; (c) any breach, violation or nonperformance in any material respect of any of Lessee's obligations under this Lease.

9.1.2 Port's Indemnity

The Port agrees to defend . . . indemnify, and hold harmless Lessee . . . from and against any and all claims, damages, expenses, costs, fees . . . to the extent arising from any of the following: (a) any negligent, grossly negligent or willful act or omission of the Port or its Associates; (b) any operations or activities of the Port or its Associates on the Premises; (c) any breach, violation or nonperformance in any material respect of any of Port's obligations under this Lease.

9.2.9 Liability

9.2.9.1 Lessee shall maintain commercial general liability insurance policy or policies insuring Lessee and the Port against liability for damages because of personal injury, bodily injury and/or death to persons, or damage to third party property, including loss of use thereof, and occurring in relation to or occasioned by reason of the operations of Lessee on or from the Premises.

Lease Agreement at 36–38.

Defendant Port of Portland contends these lease provisions establish that Defendant Kinder Morgan owes it defense and indemnity for Plaintiff's claims and that Defendant Kinder Morgan breached the Lease Agreement when it denied Defendant Port of Portland's tender.

To begin with, the Court distinguishes Defendant Port of Portland's claims for breach of contract based on the duty to defend and the duty to indemnify.[3] "The duty to indemnify is independent of the duty to defend." *W. Equities, Inc. v. St. Paul Fire & Marine Ins. Co.,* 184 Or.App. 368, 374, 56 P.3d 431, 435 (2002). "Whether an insurer has a duty to defend presents a question of law" and in this case is determined by comparing the complaint against the parties' agreement. *West Hills Development Co. v. Chartis Claims, Inc.*, 360 Or. 650, 653, 385 P.3d 1053, 1055(2016); *Valley Inland Pac. Constructors, Inc. v. Clackamas Water Dist. No. 2*, 43 Or. App. 527, 539, 603 P.2d 1381, 1390 (1979). "[I]f a complaint alleges some conduct that would be covered, and some that would not, the insurer has a duty to defend." *Klamath Pac. Corp. v. Reliance Ins. Co.*, 151 Or. App. 405, 413, 950 P.2d 909, 914 (1997). Whether a party has a duty to indemnify is determined by "examining proof of actual facts demonstrating a right to coverage." *Alexander Mfg., Inc. v. Illinois Union Ins. Co.*, 666 F. Supp. 2d 1185, 1202–03 (D. Or. 2009) (citing *Ledford v. Gutoski*, 319 Or. 397, 399, 403, 877 P.2d 80, 84 (1994) ("[T]he facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered.").

## A.    Section 9.1.1

The Court begins by discussing whether Defendant Kinder Morgan owed a duty to defend and indemnify under Section 9.1.1 of the Lease Agreement. Defendant Kinder Morgan argues the language "to the extent arising from" in the reciprocal indemnification provisions

---

[3] The Court agrees with the parties that Oregon law governs the interpretation of the Lease Agreement and Defendant Port of Portland's claims for breach of contract. The Lease Agreement contains a choice of law provision. Lease Agreement Section 14.6 (the agreement "shall be governed by the laws of the State of Oregon"). In most instances, except for a few specially provided for in other statutes, in Oregon "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen." ORS § 15.350.

limits the scope of the normal duty to defend rule. Defendant Port of Portland urges the Court to

apply a more expansive interpretation and relies on the "defend-one-defend-all rule." *See*

*Klamath Pac. Corp,* 151 Or. App. at 413, 950 P.2d at 914. ("if a complaint alleges some conduct

that would be covered, and some that would not, the insurer has a duty to defend.").

In *Port of Portland v. Kinder Morgan Operating L.P.*, Magistrate Judge Russo resolved

motions for summary judgment filed by Defendant Kinder Morgan and Defendant Port of

Portland on the same question presented here—whether Defendant Kinder Morgan breached its

duty to defend and indemnify Defendant Port of Portland pursuant to Sections 9.1.1 and 9.2.9.1

of the same lease agreement. No. 3:18-CV-00411-JR, 2020 WL 6994212, at *1 (D. Or. Aug. 20,

2020), *report and recommendation adopted sub nom. Port of Portland v. Kinder Morgan*

*Operating L.P. "C"*, No. 3:18-CV-00411-JR, 2020 WL 9211201 (D. Or. Dec. 30, 2020). As

discussed above, the plaintiff's allegation in *Pioquinto* were very similar to Plaintiff Cabading's

allegations in this case. The Court adopted Magistrate Judge Russo's Findings and

Recommendation on the duty to defend and duty to indemnify issues without modification. *Port*

*of Portland v. Kinder Morgan Operating L.P. "C"*, No. 3:18-CV-00411-JR, 2020 WL 9211201,

at *1 (D. Or. Dec. 30, 2020). The Court continues to find Judge Russo's reasoning persuasive

and finds no reason to deviate from her findings related to Section 9.1.1 of the Lease Agreement.

On the question of whether Defendant Kinder Morgan breached Section 9.1.1 of the agreement

by failing to defend and indemnify Defendant Port of Portland, she found as follows:

> While the duty to defend is normally broad, its scope is controlled by the
> language in the Lease. *See United Rentals Hwy. Techs. v. Wells Cargo*, 128 Nev.
> 666, 675, 289 P.3d 221 (2012). Here, the defense and indemnity provisions of
> Section 9.1 are limited "to the extent" that claims and damages arise from
> negligence of the indemnitor or its Associates. Under the Terminal Tariff, which
> is incorporated by reference in the Lease, the Port will not be relieved "from
> liability to the extent of its own negligence." (doc. 109, Ex. 2). Here, the Court
> cannot rule out the Port or its Associates as possible negligent causes of

> Pioquinto's injury. Section 9.1 therefore does not require Kinder Morgan to
> defend the Port against Pioquinto's action. Further, as explained below, in a
> comparative fault action such as this where indemnified and indemnifier are both
> named defendants, indemnity is not necessary because each party will ultimately
> be responsible only for their own negligence.

*Port of Portland v. Kinder Morgan Operating L.P.*, No. 3:18-CV-00411-JR, 2020 WL 6994212,

at *5.

As discussed above on the motions for summary judgment on Plaintiff's claims, the

Court cannot rule out the Port or its Associates[4] as negligent causes of Plaintiff's injuries.

Accordingly, the Court cannot say that the allegations in the complaint pertain to conduct that

could be covered by the indemnification provisions such that Defendant Kinder Morgan owed

Defendant Port of Portland a duty to defend.

In addition to its argument that Defendant Kinder Morgan owed a defense under

subparagraph (a), Defendant Port of Portland argues Defendant Kinder Morgan owed it a duty to

defend under the "defend-one-defend-all rule" because Defendant Kinder Morgan breached

obligations pursuant to subparagraphs (b) and (c) of Section 9.1.1. As for subparagraph (b),

Defendant Port of Portland argues Plaintiff alleges his injuries arose from Defendant Kinder

---

[4] Defendant Port of Portland argues the vessel was Defendant Kinder Morgan's Associate, not its
Associate. Magistrate Judge Russo addressed this issue. Again, her reasoning applies here.

> First, under the terms defined in the Lease, it is possible to be an Associate of
> both the Port and Kinder Morgan. Here, the Vessel was an Associate of the Port,
> because it satisfied at least the "licensee" definition on the date of Pioquinto's
> injury.

> The Vessel was required to seek a berth assignment from the Port before they
> were allowed entry to the terminal. When it arrived at Terminal 4, the Vessel
> applied for and obtained the Port's permission to dock at Berth 411. The Vessel
> visited the Terminal and complied with the Port's tariff procedures. On these
> alleged facts, the Vessel was an Associate of the Port.

*Port of Portland*, No. 3:18-CV-00411-JR, 2020 WL 6994212, at *4.

Morgan's "operations or activities" on the "Premises." Again, this argument ignores the fact that the relevant indemnification provisions set up "a comparative fault scheme in which each party internalizes a share of the defense and liability." *Port of Portland*, No. 3:18-CV-00411-JR, 2020 WL 6994212, at \*2. This scheme modifies the default rule calling for defense of an action if some of the allegations pertain to covered conduct.

As for subparagraph (c), Defendant Port of Portland argues it has a right to defense and indemnity because Defendant Kinder Morgan failed to perform a material lease term. It argues Section 6.5 of the Lease Agreement required Defendant Kinder Morgan to provide written notice of any deficiencies in the fender systems and that it breached this requirement when it failed to request maintenance on the fender system. Section 6.5 of the Lease Agreement is discussed at length in the sections above. Defendant Port of Portland argues this alleged breach of Section 6.5 is relevant to Plaintiff's allegations, and thus triggers the duty to defend because Plaintiff's theory of liability rests on Defendant Port of Portland's failure to maintain the fender systems.

First, as discussed above, Plaintiff alleges both Defendants' failure to maintain the fender system caused his injuries. Thus, under the comparative fault scheme of the provisions, Plaintiff's allegations in the complaint would not have triggered the duty to defend. Perhaps more importantly, the Court disagrees with Defendant Port of Portland's interpretation of Section 6.5 of the Lease Agreement.

Under Section 6.5, Defendant Kinder Morgan is not liable for maintenance of the fender system. Section 6.5 discusses the maintenance obligations of Defendant Port of Portland. The last two sentences provide Defendant Kinder Morgan a contractual right to sue Defendant Port of Portland for breach if it fails to conduct required maintenance after Defendant Kinder Morgan provides it written notice. These two sentences also protect Defendant Port of Portland from a

claim of breach where Defendant Kinder Morgan has not provided it written notice of required maintenance to be performed. Accordingly, Defendant Kinder Morgan cannot owe Defendant Port of Portland a duty to defend based on any alleged breach of Section 6.5 because it does not create a contractual obligation on the part of Defendant Kinder Morgan in the manner Defendant Port of Portland suggests.

**B.      Section 9.2.9.1**

Next, Defendant Kinder Morgan moves for summary judgment on Defendant Port of Portland's defense and indemnity claims arguing it cannot show it breached Section 9.2.9.1 of the Lease Agreement. Defendant Port of Portland argues that as a commercial general liability provision, Section 9.2.9.1 includes a duty to defend and that because Plaintiff's injuries occurred "in relation to" or "were occasioned by reasons of" Defendant Kinder Morgan's operations on the Premise it owed the Port a duty to defend against Plaintiff's action.

**i.      Duty to Defend**

Defendant Port or Portland does not establish that Section 9.2.9.1. includes a duty to defend. Defendant Port of Portland cites one case for the general proposition that primary liability insurance typically includes defense and indemnity coverage. *See* Def. Port Resp. at 13 (citing *Oregon Mut. Ins. Co. v. Those Certain Underwriters at Lloyd's London Subscribing to Pol'y No. OROAKG2-CNE*, 295 Or. App. 790, 798 n. 4, 437 P.3d 232, 237 (2019)). *Oregon Mut. Ins. Co.* does not directly address the question at hand. In discussing the different tiers of typical insurance coverage, *Oregon Mut. Ins. Co.*, cited to an insurance treatise for the general rule that "[t]he primary insurer is responsible in the first instance for defending and indemnifying the insured in the event of a covered or potentially covered occurrence or claim." *Id.*

31 – OPINION & ORDER

Although a duty to defend is typical of primary liability insurance coverage, there is no language in Section 9.2.9.1. or the parties' Certificate of Liability Insurance that requires a defense by Defendant Kinder Morgan. Reilly Decl. Ex. 8 at 6–7, ECF 101-8. *Cf. W. Hills Dev. Co. v. Chartis Claims, Inc. Oregon Auto. Ins. Co.*, 360 Or. 650, 655, 385 P.3d 1053, 1056 (2016) (noting that "the four-corners rule derives from the insurance policy itself" and finding "that principle in the insurance policy" at issue in the case. "The policy state[ed] that Oregon Auto will "defend the insured against any 'suit' seeking those damages" that are covered by the policy."); *PIH Beaverton LLC v. Red Shield Ins. Co.*, 289 Or. App. 788, 792, 412 P.3d 234, 236 (2018) (noting that the general liability policy at issue "imposed a duty on defendant to defend the insured against any lawsuit seeking those damages"); *see also* Matthew Bender & Company, Inc., Business Insurance Law and Practice Guide § 4.05 (June 2021) ("While most general liability insurance policies, and some specialized policies, carry with them a duty to defend the policyholder, there are a few policies which contain no express defense obligation. Courts have held that no duty to defend arises unless such an obligation is created expressly."). There is no express provision here that requires Defendant Kinder Morgan as the insurer to defend an action brought by a third party against Defendant Port of Portland on a cause of action that might fall within the policy or Section 9.2.9.1. Presumably because Defendant Kinder Morgan is self-insured, Defendants do not direct the Court to language in a general liability insurance policy that answers this question. Without express language that refers to defense or even defense costs, the Court cannot find Section 9.2.9.1 creates an independent duty to defend.

This finding is bolstered by the fact that Defendants bargained for and expressly defined their relative defense obligations in the indemnity provisions of the Lease Agreement. *See* Sections 9.1.1 and 9.1.2.

ii.    **Duty to Indemnify**

As with Sections 9.1.1, the Court cannot determine whether Defendant Kinder Morgan owes Defendant Port of Portland a duty to indemnify at this stage in the litigation under Section 9.2.9.1. As discussed above, this case presents significant questions of comparative fault. Plaintiff brought claims against the vessel, Defendant Port of Portland, and Defendant Kinder Morgan. Defendants assert defenses of contributory negligence on the part of Plaintiff, the vessel, and third parties. Port Answer Affirmative Defenses ¶¶ 2–3, ECF 61; KM Answer ¶¶ 27– 29, ECF 68. The court has denied summary judgment to Defendants on Plaintiff's negligence claims. Thus, at this point in the litigation "the facts proved at trial on which liability is established" will determine whether Defendant Kinder Morgan owes Defendant Port of Portland a duty to indemnify. *Ledford*, 319 Or. at 403; *Bighorn Logging Corp. v. Truck Ins. Exch.*, 295 Or. App. 819, 828, 437 P.3d 287 (2019), rev. den. 365 Or. 195 (2019) (finding that the duty to indemnify depends on whether the indemnitee "is found to be liable for harm or injury that is covered by" the agreement and is triggered when "the findings made by the trier of fact as to what actually occurred fall within the scope of the indemnity obligation"). Accordingly, the Court grants in part and denies in part Defendant Kinder Morgan's motion for summary judgment on Defendant Port of Portland's crossclaims.

//

//

//

//

//

//

**CONCLUSION**

Defendant Port of Portland's Motion for Summary Judgment [89] is DENIED. Defendant

Kinder Morgan's Motion for Summary Judgment on Plaintiff's Claims [84] and Alternative

Motion for Summary Judgment on Plaintiff's Claim [90] are DENIED. Defendant Kinder

Morgan's Motion to Strike Plaintiff's Rebuttal Report [82] is DENIED. Defendant Kinder

Morgan's Motion for Summary Judgment on Defendant Port of Portland's Crossclaims [85] is

GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.


DATED:____April 4, 2022_____.



_____
MARCO A. HERNÁNDEZ
United States District Judge